Filed 3/1/16 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JEFFREY D. STUARD et al., | |
| Plaintiffs and Respondents, | C076007 |
| v. | (Super. Ct. No. 12FL07391) |
| MATTHEW STUARD, | ORDER MODIFING OPINION AND DENYING PETITION |
| Defendant and Appellant. | FOR REHEARING |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed February 5, 2016, in the above cause is modified in the following respects:

In the published portion of the opinion, replace the last paragraph on page 18 with the following:

The thrust of Matthew's as-applied substantive due process argument was that the grandparents in this case have *no* visitation right. Nested within this argument was the assertion that the visitation order was overbroad for "giving the grandparents over 20% of the time with Riley,

1

ordering the parents[] to pay thousands in attorney fees, sanctions, and counseling fees, and ordering Matthew to indefinite counseling." As we noted above, "An as-applied challenge . . . 'contemplates *analysis of the facts of a particular case* . . . to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the [defendant] of a protected right.' " (*Tobe, supra,* 9 Cal.4th at p. 1084, italics added.) Here, Matthew provided no constitutional analysis of the facts upon which he now rests his as-applied challenge -- namely, the financial and practical day-to-day effects of the visitation order so disrupt his and Riley's life that the visitation order violates substantive due process.

We conclude the trial court's application of section 3104 does not violate Matthew's federal or state substantive due process rights.


This modification does not change the judgment.
Appellant's petition for rehearing is denied.



_____/s/_____,
NICHOLSON,   Acting P.J.



_____/s/_____,
MURRAY, J.



_____/s/_____,
HOCH, J.


2

Filed 2/5/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JEFFREY D. STUARD et al., <br><br>       Plaintiffs and Respondents, <br><br> v. <br><br> MATTHEW STUARD, <br><br>       Defendant and Appellant. | C076007 <br><br> (Super. Ct. No. 12FL07391) |

APPEAL from a judgment of the Superior Court of Sacramento County, Jaime R. Roman, Judge. Affirmed in part and reversed in part.

C. Athena Roussos for Defendant and Appellant.

Frank E. Dougherty for Plaintiffs and Respondents.

Matthew Stuard raises equal protection and substantive due process challenges to an order allowing visitation of his daughter, Riley, by paternal grandparents Jeffrey

_____

*     Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts V through VII.

1

Stuard (Jeff) and Cynthia Stuard (Cindy).[1]  The trial court awarded grandparent visitation under Family Code section 3104 even though there is no allegation Matthew or his ex-wife, Rebekah, are unfit parents.[2]  The trial court based its order on findings there is a preexisting relationship between Riley and her paternal grandparents and it is in Riley's best interest to continue to have contact with Jeff and Cindy.

On appeal, Matthew contends (1) on its face, section 3104 violates equal protection guarantees by discriminating between divorced parents and married parents who are cohabiting, (2) as applied, section 3104 violates his equal protection rights because he would not be subject to the grandparent visitation order if he were still married to Rebekah, (3) as applied, section 3104 violates his substantive due process rights by undermining his fundamental right to parent in the absence of any finding he or Rebekah are unfit parents, (4) the trial court failed to follow section 3104 in basing the visitation order on Riley's best interest and her parents' role in allowing Jeff and Cindy to develop a relationship with her, (5) the trial court awarded need-based attorney fees under section 2030 even though the statute does not apply to grandparent visitation proceedings, (6) a sanctions order imposed on Matthew under section 271 erroneously penalizes his assertion of constitutional arguments against visitation, and (7) an order that he participate in anger management counseling violates section 3190 by failing to limit the duration to one year and for lack of statutorily required findings.

As to Matthew's equal protection challenge, we deem the issue to be forfeited for failure to present any argument on this point in the trial court and for lack of analysis on

---

[1]  Due to shared surname, we refer to members of the Stuard family by their first names.  (See, e.g., *Finberg v. Manset* (2014) 223 Cal.App.4th 529, 531, fn. 2 (*Finberg*).)  Although Riley's mother, Rebekah Stuard, joined with Matthew in the trial court in opposing grandparent visitation, Rebekah is not a party to this appeal.

[2]  Undesignated statutory references are to the Family Code.

2

appeal as to how he is similarly situated with parents who are not subject to a grandparent visitation petition. As to substantive due process, we conclude section 3104 permissibly reflects a legitimate state interest in preserving an already existing grandparent-grandchild relationship that is threatened but in the best interest of the grandchild to safeguard. Here, the grandparent visitation order permissibly safeguards a strong bond between Riley and her paternal grandparents that Matthew and Rebekah fostered over the years and Riley's best interest in preserving her relationship with Jeff and Cindy after her parents' relationship ended in divorce. United States and California Supreme Court decisions have rejected the contention that the right to parent is absolute except after a finding of parental unfitness.

We are not persuaded by Matthew's argument the trial court misapplied section 3104 by considering Riley's best interest and her parents' role in allowing the development of her relationship with Jeff and Cindy. Section 3104 requires the trial court to consider these factors in determining whether to award grandparent visitation. We deem Matthew to be estopped from challenging the applicability of section 2030 to this case because he asked for attorney fees under the same section. We reject Matthew's characterization of the sanctions ordered under section 271 as a penalty for asserting his constitutional right to parent Riley. Instead, the sanctions under section 271 reflected Matthew's "obstreperous conduct" that unnecessarily increased the cost and duration of the litigation.

Finally, we conclude the anger management counseling portion of the trial court's order did not include the findings required by section 3190 and did not limit the counseling to a period of not more than one year. Accordingly, we reverse this portion of the order and remand for the trial court to make the statutorily required findings and to limit counseling to one year if the counseling order is reimposed.

3

BACKGROUND

Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment, resolving any conflicts in the evidence in support thereof. (*612 South LLC v. Laconic Ltd. Partnership* (2010) 184 Cal.App.4th 1270, 1276.)

Riley was born to Matthew and Rebekah in 2004. Jeff and Cindy, Matthew's parents, were present for the birth. When Jeff retired the following year, he became Riley's primary caregiver. Around that time, at Matthew's suggestion, Jeff and Cindy moved from Sacramento to Roseville, three blocks from where Matthew and Rebekah lived, to facilitate caring for Riley. Jeff referred to Riley as his "golden granddaughter."

In 2008, when Riley entered preschool, Matthew would drop her off at school and Jeff would pick her up and watch her after school. This was also the year Matthew and Rebekah separated and ultimately dissolved the marriage. Following the separation, Jeff and Cindy saw even more of Riley, often watching their granddaughter during each parent's parenting time, while that parent was at work. According to Cindy, they watched Riley about 25 days each month during this time period.

In 2009, Matthew and Riley moved in with Jeff and Cindy, which allowed for even greater contact between the child and her grandparents. Jeff and Cindy helped her get ready for school, took her to and from school, and watched her until Matthew came home from work, or until Rebekah picked her up to exercise her parenting time with the child. The grandparents also attended various school and sports activities.

At some point after the move to Jeff and Cindy's house, the relationship between Matthew and his parents soured. According to Cindy, her son's personality changed when he began taking medication for Attention Deficit Hyperactivity Disorder (ADHD). He became impatient and uncommunicative, was often angry, rude, and argumentative, and routinely made disparaging remarks. After feeding Riley dinner, Matthew would

4

often take her upstairs to their bedrooms without a word. Indeed, at least when Matthew was home, Jeff and Cindy needed his permission to say goodnight to their granddaughter. Jeff tried to talk to Matthew about his behavioral changes, but Matthew was unresponsive. Eventually, Jeff told Matthew to find his own place to live.

Matthew moved out with Riley in 2011, informing Jeff he would never see his granddaughter again. Notwithstanding this declaration, Matthew brought Riley over to visit Jeff and Cindy on various occasions, including her seventh birthday. However, during one of these visits, Riley indicated she wanted to stay and watch television at her grandparents' house. Matthew responded by taking her home and had little contact with Jeff and Cindy after that. For their part, Jeff and Cindy tried to schedule time to see Riley through Matthew, but were unsuccessful. On one occasion, they went to Riley's soccer practice unannounced. Matthew told them to leave the practice or he would leave with Riley. When they did not immediately leave, Matthew pulled Riley out of practice and started taking her to his car. Jeff and Cindy then left so that Riley could finish her practice.

Unable to schedule time to see Riley through Matthew, Jeff and Cindy contacted Rebekah to obtain her permission to attend their granddaughter's soccer games. Rebekah and her new boyfriend, Will, arranged for Jeff and Cindy to be able to visit with Riley during Rebekah's parenting time through the end of 2011, including Halloween trick-or-treating, an overnight visit in November, and exchanging Christmas presents. Jeff and Cindy also obtained Rebekah's permission to participate in Riley's school activities during this time period.

When Matthew discovered his parents were seeing Riley through Rebekah, he became very angry. Sometime in 2012, Matthew and Rebekah had a conversation about his objection to his parents seeing Riley, after which Rebekah told Jeff and Cindy to work their issues out with Matthew directly. Instead, Cindy contacted Riley's soccer coach to

5

obtain her soccer schedule. At various points, she also contacted Rebekah's by-then-fiancé Will and her father to seek their assistance in seeing Riley, but to no avail.

The original petition for grandparent visitation in this case was filed in January 2013. Diana Vodrey was appointed to serve as mediator. Vodrey met with Rebekah, Matthew, Jeff, Cindy, and Riley -- in joint and separate sessions, observing Riley with both her parents and her grandparents. Vodrey found Riley to be a smart and articulate child who was neither withdrawn nor shy. Riley said she was happy at her grandparents' house and wanted to see them, asking Vodrey: "Why can't I see [my grandparents]? When can I see them?" Vodrey recommended grandparent visitation, explaining this was what Riley wanted, the bond between Riley and her grandparents was "quite strong," and Jeff and Cindy were capable of adequately caring for her. Vodrey also determined Riley suffered "damage" as the result of her parents' decision to keep her from her grandparents, explaining: "Something was terminated that was very, very important to her. It was ended abruptly. That always hurts children. It's an abandonment issue. Someone important in her life left." Vodrey further concluded Matthew was " 'angry and controlling' " toward his parents and recommended anger management counseling.

An amended grandparent visitation petition was filed in July 2013. In addition to visitation, the petition requested sanctions under section 271, $2,000 in costs for the court-ordered mediation, and $3,000 in need-based attorney fees under section 2030. Matthew opposed the petition and asked the trial court to reject Vodrey's recommendation regarding visitation. In August 2013, Matthew filed his own request for need-based attorney fees, which was denied.

Trial commenced in January 2014. The relevant facts adduced during trial are those set forth above, with the following additions. Matthew testified that after he and Riley moved in with his parents, he became concerned about their behavior, which included them making disparaging remarks about Rebekah to Riley. When he made his

concerns known, they responded by saying he was crazy or making things up. Matthew also testified he believed the litigation was, as he put it, a "bullying and intimidation campaign."

Rebekah testified she and Matthew had difficulties co-parenting while married and initially after they separated, but became good co-parents following their divorce. As she explained her opposition to grandparent visitation, when Matthew came to her with his concerns about his parents visiting Riley, she decided to "respect him as a parent and validate his concerns" by withdrawing her permission until they had worked things out with him, at which point Cindy "circumvented" her and went to her fiancé. Rebekah continued: "Grandparents have rights, but it does not supersede your parental authority, and my big concern and what I heard during Cindy's testimony yesterday and Jeff's today is that if they think that they are right that they're going to do what they want to do, regardless of what I say, and for me when it comes to my child that I am in charge of, that I gave birth to, that I'm responsible for, that's not okay, and if you want to spend time with her and love her you have to respect me as a parent and my decisions, whether you like them or not, and if I can't trust you to do that, then I can't trust you to be around her."

The trial court granted the petition. After describing the case as "tragic" and driven by Matthew's "bitterness at having been asked to depart the grandparents' residence," with "no evidence of culpable misconduct of any relevant kind" on the part of either grandparent, the trial court applied section 3104, found by clear and convincing evidence there was a preexisting relationship between Riley and her grandparents that engendered a bond such that grandparent visitation was in Riley's best interest, balanced this interest of Riley's against the right of her parents to exercise their parental authority,

7

and concluded Riley's interest prevailed.[3]  The trial court adopted Vodrey's recommendations regarding visitation.  Two months after the effective date of the order, Jeff and Cindy may have Riley once a week during a weekday overnight visit and one overnight weekend visit per month.  Jeff and Cindy may take Riley on a seven-day vacation each summer and have an overnight visit with her around Thanksgiving and Christmas.  Additionally, Matthew and Rebekah may not interfere with Jeff and Cindy attending or participating in Riley's school, social, or athletic activities, and must keep Jeff and Cindy informed of such activities.  The trial court also awarded Jeff and Cindy $3,000 in attorney fees under section 2030, $3,000 in sanctions under section 271, and $2,000 in counseling expenses under section 3104, all jointly and severally payable by Matthew and Rebekah.  Finally, the trial court ordered Matthew to participate in anger management counseling at his own expense.  Matthew appeals.[4]

## DISCUSSION

## I

### *Statutory Overview*

In order to place Matthew's constitutional challenges to section 3104 in their proper context, we begin with an overview of the statutory scheme.

"Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory.  [Citation.]  Three California statutes expressly address grandparent visitation:  [S]ection 3102, which permits visitation by a deceased parent's children, siblings, parents, and grandparents if such visitation would be in the best interests of the child; section 3103, which permits a court in specified proceedings involving the custody

---

[3]      There are no allegations of unfitness against Jeffrey and Cindy.

[4]      We granted Matthew's motion to treat his premature notice of appeal as being timely filed from the formal order of August 7, 2014.

of a child to grant grandparent visitation; and section 3104, which permits grandparents to petition for visitation if the grandchild's parents are not married or if certain other conditions are met." (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219-220 (*Harris*), fns. omitted.)

This case involves section 3104. Subdivision (a) of this section provides: "On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: [¶] (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child. [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority." (§ 3104, subd. (a).) However, such a petition "shall not be filed while the natural or adoptive parents are married, unless one or more of the following circumstances exist: [¶] (1) The parents are currently living separately and apart on a permanent or indefinite basis. [¶] (2) One of the parents has been absent for more than one month without the other spouse knowing the whereabouts of the absent spouse. [¶] (3) One of the parents joins in the petition with the grandparents. [¶] (4) The child is not residing with either parent. [¶] (5) The child has been adopted by a stepparent. [¶] (6) One of the parents is incarcerated or involuntarily institutionalized." (*Id*., subd. (b).)

Section 3104 also provides for "a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interest of a minor child" in two situations: (1) "the natural or adoptive parents agree that the grandparent should not be granted visitation rights" (*id*., subd. (e)); and (2) "the parent who has been awarded sole legal and physical custody of the child in another proceeding, or the parent with whom the child resides if there is currently no operative order objects to visitation by the grandparent" (*id*., subd. (f)).

9

Thus, the statutory scheme gives the greatest protection to "the integrity of the nuclear family unit and the ability of married, cohabitating parents to make decisions free from state interference" by shielding married, cohabitating parents from the filing of a grandparent visitation petition except in very limited situations. (*Lopez v. Martinez* (2000) 85 Cal.App.4th 279, 286 (*Lopez*), superseded by statute on another point as stated in *Finberg, supra,* 223 Cal.App.4th at p. 534.) Even where such a petition may be filed -- for example, as here, where the parents are divorced and living apart -- the statutory scheme still protects parental autonomy by creating a presumption against grandparent visitation where both parents agree the petitioning grandparent(s) should not be granted visitation rights (§ 3104, subd. (e)) or where the parent who has been awarded sole legal and physical custody of the child, or the parent with whom the child resides if there is no custody order, objects to such visitation (§ 3104, subd. (f)). At the same time, by making this presumption rebuttable, the statutory scheme recognizes "the importance of family ties and the value of a relationship between grandparents and grandchildren." (*Lopez*, *supra*, 85 Cal.App.4th at p. 286.) As the author of a recent revision to the statute expressed: """It is common knowledge that children who have strong, loving adults in their lives thrive. Grandparents can be that strong, loving adult for a child. These relationships become even more vital during times when families are dissolving and changing. . . .""" (*Finberg*, *supra*, 223 Cal.App.4th at p. 536, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2517 (2005-2006 Reg. Sess.) May 9, 2006, p. 3.) "[T]he key to understanding the Legislature's intent is to remember the primary impetus behind the provision was not the strengthening of grandparental visitation rights, but the protection of the best interest of the child." (*Lopez*, *supra*, 85 Cal.App.4th at p. 286.)

## II

### *Equal Protection Challenge*

Matthew contends, "section 3104 is facially unconstitutional and unconstitutional as applied here, pursuant to the Equal Protection Clause of the United States and California Constitutions." Jeff and Cindy counter Matthew has not preserved the issue for appellate review because he did not make any equal protection challenge to section 3104 in the trial court. We conclude Matthew has forfeited the contentions because he did not raise these Equal Protection challenges to section 3104 below and, on appeal, he does not offer any analysis of how he is similarly situated to parents not subject to a grandparent visitation petition.

In the trial court, Matthew and Rebekah challenged the constitutional validity of section 3104 by citing *Troxel v. Granville* (2000) 530 U.S. 57 [147 L.Ed.2d 49] (*Troxel*). However, *Troxel* considered only an as-applied challenge on *substantive due process* grounds to a Washington state grandparent visitation statute. (*Id.* at p. 73.) An equal protection challenge differs in that it focuses on whether similarly situated groups receive constitutionally impermissible disparate treatment.

"Equal protection under the law means that parties similarly situated with respect to a law must be treated alike under the law. [Citations.] That does not mean, however, that differential treatment is always unconstitutional. Where a statute makes distinctions involving inherently suspect classifications or fundamental rights, it is subject to 'strict scrutiny' and may be upheld only if the *government* establishes the distinction is necessary to achieve a compelling state interest. [Citation.] Most legislation, however, is reviewed only to determine whether the challenged classification bears a rational relationship to a legitimate state interest. [Citation.] In areas of social or economic policy not involving suspect classifications or fundamental rights, a statute must be

upheld so long as there is any reasonably conceivable set of facts that provides a 'rational basis' for the classification. [Citations.]

"Moreover, in those cases *not* involving suspect classifications or fundamental rights, it is the *party challenging the statute* who must demonstrate that the difference in treatment is unrelated to the achievement of any legitimate government purpose. [Citation.] This means that the challenging party must essentially negate every conceivable legitimate basis which might support the statutory classification. [Citation.] Because a legislative body is not required to articulate its reasons for enacting a statute, whether the conceived reason supporting the statute actually motivated the legislative body is entirely irrelevant for constitutional purposes. [Citations.] 'In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.' [Citation.] Under the rational basis test, a strong presumption favors the validity of the challenged statute. [Citations.]" (*420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1333-1334.)

As the party challenging the application of section 3104, Matthew had the burden to demonstrate he is similarly situated to parents who are not subject to a grandparent visitation petition under section 3104. However, Matthew presented no argument in the trial court that his equal protection right was violated by disparate treatment from a similarly situated group. Consequently, Matthew did not preserve the equal protection issue for appellate review. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406 ["In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court"].)

Even if the equal protection challenge had been preserved for appeal, the issue is forfeited in the absence of meaningful legal analysis of the similarly situated requirement in Matthew's equal protection argument. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) In a single paragraph of the opening brief and two paragraphs of the reply brief, Matthew

asserts parents who are divorced or separated (and subject to grandparent visitation petitions) are similarly situated to married, cohabitating parents (who are not subject to grandparent visitation petitions) because both categories involve children with two natural parents. Matthew's assertion lacks any meaningful analysis of how the circumstances of marital dissolution and an end to cohabitation among the parents and child might differ or be considered similar for the categories of parents he believes section 3104 wrongfully discriminates between. Accordingly, we conclude the equal protection argument is undeveloped and therefore forfeited.

## III

### *Substantive Due Process*

Matthew's final constitutional challenge asserts that, as applied in this case, section 3104 violates his federal and state substantive due process rights. We reject the challenge.

### A.

### *Review*

We review issues of statutory construction and constitutional validity under the de novo standard of review. (*Finberg, supra,* 223 Cal.App.4th at p. 532.) We begin with the presumption that the statue is valid unless a "clear and unquestionable" conflict "with a provision of the state or federal Constitution" is established. (*Id.* at p. 535, quoting *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 279–280.) "When considering a claim that a facially valid statute has been applied in a constitutionally impermissible manner, 'the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction.' (*Tobe*, *supra*, 9 Cal.4th at p. 1084.) An as-applied challenge 'contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application

13

deprived the [defendant] of a protected right.' (*Ibid*.) When reviewing an as-applied constitutional challenge on appeal, we defer to the trial court's findings on historical facts that are supported by substantial evidence, and then independently review the constitutionality of the statute under those facts. (See *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1127–1130.)" (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1378.) "An as applied challenge may seek . . . relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied . . . ." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)

## B.

### *Trial Court Findings*

At trial, Matthew submitted a statement of issues that relied on *Troxel*, *supra*, 530 U.S. 57, to argue he had fundamental parental rights to make decisions regarding visitation of his child with third parties. The trial court rejected the argument. In doing so, the trial court acknowledged that "Rebekah and Matthew do not err when they argue their parental decisions are entitled to deference and the grandparents' submission. But decisions are not made in a vacuum and not without consequence. From the child's birth, both parents permitted the grandparents' unfettered access to the child. Days grew into weeks, weeks grew into months, and, in time, the months became years. With both regular and increasing contact between the grandparents and their grandchild, the parental authority that would sever the relation -- without more -- reciprocally and incrementally diminished."

## C.

### *Analysis*

Matthew's substantive due process argument rests on the suggestion his and Rebekah's undisputed parental fitness stands as an impermeable barrier to a grandparent visitation order. The California Supreme Court rejected a similar argument regarding section 3104 in *Harris*, *supra*, 34 Cal.4th 210. *Harris* involved a petition by paternal grandparents for visitation of a grandchild who had lived with them for a week in California until the mother and child moved out. (*Id.* at p. 215.) Mother, who had sole legal and physical custody of the child, moved about for several years and eventually settled in Utah. (*Id.* at pp. 215-216.) The paternal grandparents attempted to maintain their relationship with the grandchild by flying from California to visit their granddaughter while mother increasingly withheld access to the child. (*Id.* at pp. 216-219.) The paternal grandparents filed a petition for grandparent visitation that the trial court granted and the Court of Appeal reversed on grounds the visitation order violated mother's federal and state constitutional rights. (*Id.* at pp. 218-219.) The California Supreme Court granted review and reversed, holding that "section 3104 controls in this case and that the statute is constitutional, both on its face and as applied." (*Id.* at p. 214.) Although father continued to support the paternal grandparents' visitation petition, his parental rights were terminated after the trial court issued the visitation order. (*Id.* at pp. 219, 221.)

*Harris* involved no allegation of mother's parental unfitness. (See 34 Cal.4th at p. 221.) Thus, the California Supreme Court considered whether section 3104's "rebuttable presumption against visitation 'if the parent who has been awarded sole legal and physical custody of the child in another proceeding . . . objects to visitation by the grandparent' " sufficed to sufficiently preserve mother's fundamental liberty interests under the federal and state constitutions. (*Id.* at pp. 221, 223.) In its federal

15

constitutional analysis, the *Harris* court examined the United States Supreme Court's decision in *Troxel, supra*, 530 U.S. 57. (*Harris*, at p. 223.)

*Harris, supra,* 34 Cal.4th 210 noted Justice O'Connor's plurality opinion in *Troxel* "concluded that the Washington statute, as applied in that case, violated that fundamental liberty interest. ([*Troxel*, *supra*, 530 U.S. at p.] 67.) The plurality stated: '[T]here is a presumption that fit parents act in the best interests of their children.' (*Id*. at p. 68.) 'Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. [Citation.]' (*Id*. at pp. 68–69, (plur. opn. of O'Connor, J.).) [¶] But the plurality did not prohibit the State from ordering grandparent visitation, stating instead: 'The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [mother]'s determination of her daughters' best interests.' (*Troxel v. Granville, supra,* 530 U.S. 57, 69, 120 S.Ct. 2054 (plur. opn. of O'Connor, J.).) To the contrary, '[t]he judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be "impact[ed] adversely." In effect, the judge placed on [the mother], the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters.' (*Ibid*.)" (*Harris*, *supra*, 34 Cal.4th at pp. 223-224.) "The Washington statute was, in the words of the plurality in *Troxel*, 'breathtakingly broad,' permitting ' "[a]ny person" ' to petition the superior court for visitation rights ' "at any time." ' " (*Id*. at pp. 225-226, quoting *Troxel,* at p. 67 (plur. opn. of O'Connor, J.).)

In contrast to the "breathtakingly broad" Washington statute in *Troxel*, *supra*, 530 U.S. at page 67, California's "Legislature limited section 3104 by creating rebuttable presumptions against grandparent visitation 'if the child's parents agree that the grandparent should not be granted visitation rights' (§ 3104, subd. (e)), or if the parent

16

awarded sole custody objects to grandparent visitation (§ 3104, subd. (f)). These provisions prevent the situation that arose in *Troxel* in which the court ordered visitation over the objection of the child's sole surviving fit parent based upon a finding that such visitation was in the child's best interest. Unlike the Washington statute at issue in *Troxel*, section 3104 gives 'special weight' to the parents' decision, if the parents agree that visitation is not in their child's best interest, or to the decision of a parent who has been awarded sole custody of the child. The high court recognized as much by citing with approval section 3104, subdivision (e). (*Troxel v. Granville, supra*, 530 U.S. 57, 70 (plur. opn. of O'Connor, J.).)"[5] (*Harris, supra*, 34 Cal.4th 210, 226.) Thus, the California Supreme Court held that "section 3104 does not suffer from the constitutional infirmities that plagued the Washington statute considered in *Troxel*." (*Id.* at p. 226.)

Section 3104 does not violate substantive due process by granting grandparent visitation over the objection of Matthew and Rebekah. This court has previously held "that because the fundamental parenting right recognized by California courts is not absolute, the opposition of two fit parents to court-ordered grandparent visitation does not, by itself, preclude the court from ordering visitation." (*Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1487 (*Fenn*).) To be sure, *Troxel* requires that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (*Troxel, supra*,

---

[5]     In *Troxel*, the plurality noted that "[t]he decisional framework employed by the [Washington] Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. [Citation.] In that respect, the [Washington] court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters. Cf., e.g., Cal. Fam. Code Ann. § 3104(e) (West 1994) (rebuttable presumption that grandparent visitation is not in child's best interest if parents agree that visitation rights should not be granted) . . .)." (*Troxel, supra*, 530 U.S. at pp. 69-70.)

530 U.S. at p. 68.) However, "[g]iving the parent's determination 'special weight' is different than insulating the parent's determination from any court intervention whatsoever. *Troxel* does not support defendant's suggestion that a fit parent's decisions are immune from judicial review. Nor can we discern any basis in the law for reaching a different conclusion when there are two parents rather than one. The decision of father and his wife about whether and under what conditions grandparents should have visitation with their grandchildren is entitled to 'special weight' under *Troxel* -- assuming both are fit parents -- but no more." (*Fenn*, *supra*, 109 Cal.App.4th at p. 1479.)

Here, Jeff and Cindy have been an integral part of Riley's life, from her birth until several years later when Matthew began blocking visitation with her. As the trial court noted, both of Riley's parents acceded to Jeff and Cindy's participation in Riley's daily life, school activities, and social events. The disruption of the grandparent-grandchild bond in this case follows the disruption of another bond –- that between Matthew and Rebekah and its attending consequences for Riley. The continuance of a preexisting relationship with grandparents can provide stable and dependable nurturing the grandchild can continue to count on in the midst of a rift in the parental relationship. Thus, what Matthew seeks to accomplish by his reliance on substantive due process is to disrupt a relationship the court-appointed mediator characterized as a "strong" bond between Riley and her paternal grandparents. The Legislature, however, did not violate Matthew's substantive due process rights by safeguarding Riley's relationship with her grandparents during a time when her parents separated and ended their marriage.

We conclude the trial court did not abuse its discretion in applying section 3104 after finding a preexisting grandparent-grandchild relationship that is in Riley's best interest to continue.

# IV

## *Whether the Trial Court Abused its Discretion under Section 3104*

Matthew contends the trial court abused its discretion under section 3104 by awarding grandparent visitation to Jeff and Cindy. Specifically, he argues the trial court used the wrong legal standard under section 3104 by failing to heed the presumption against grandparent visitation and by adopting an improper "child-centric" approach. In advancing this issue, Matthew continues to rely on the argument his parental rights over Riley are absolute in the absence of proof of parental unfitness. We rejected this argument in part III, *ante*. To the extent he argues the trial court failed to exercise its discretion within the parameters of section 3104, we reject the argument based on our conclusion the trial court's statement of decision demonstrates its adherence to section 3104.

## A.

## *Discretion under Section 3104*

In *Harris*, the California Supreme Court explained, "under the statutory scheme in question, the Legislature expressly requires the trial court to '[b]alance[] the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority.' (§ 3104, subd. (a)(2).) Guided judicial discretion regarding this factor 'protect[s] children against the arbitrary exercise of parental authority that is not in fact motivated by an interest in the welfare of the child.' (*Troxel*, [*supra*, 530 U.S.] at p. 89, (dis. opn. of Stevens, J.).)" (*Harris*, *supra*, 34 Cal.4th at p. 252.)

Generally, "[t]he standard of appellate review of . . . visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) This means we will not reverse the visitation order " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently

absurd determination [citations].' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319, quoting *In re Geoffrey G*. (1979) 98 Cal.App.3d 412, 421.)  Moreover, "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Stephanie M*., at p. 319, quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)  Finally, " '[t]he burden is on the party complaining to establish an abuse of discretion . . . .' " (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

**B.**

***Rebuttable Presumption that Visitation Is Not in the Child's Best Interest***

We reject Matthew's argument the trial court abandoned section 3104's "rebuttable presumption that the visitation of a grandparent is not in the best interest of a minor child if the natural or adoptive parents agree that the grandparent should not be granted visitation rights." (§ 3104, subd. (e).)  The trial court's statement of decision stated, "No party should read or consider the court's ultimate decision as suggesting that parental authority does not exist.  It does.  Rebekah and Matthew each continues to remain as the child's primary authorities.  But effectively, Rebekah and Matthew should comprehend that their conduct of the span of years vitiated . . . the parental authority over the grandparents' access to Riley to the degree that parental authority [for Jeff and Cindy] to attend public functions where Riley was present, assist in school where Riley attended, or initiate contact with Riley diminished."

**C.**

***Best Interests of the Child***

We are also not persuaded by Matthew's contention the trial court failed to apply the statutory presumption against grandparent visitation by adopting a " 'child-centric' approach."  Although Matthew asserts the trial court endowed the preexisting

20

grandparent-grandchild relationship with undue importance, we conclude the trial court properly took into account the statutory prerequisite for a grandparent visitation petition of a preexisting relationship. (§ 3104, subd. (a)(1) [allowing grandparent visitation only when the trial court "[f]inds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child"].) Subdivision (a)(1) of section 3104 and the trial court's reasoning reflect the reality that Matthew and Rebekah fostered the grandparent-grandchild relationship at issue in this case. Section 3104 does not create a new grandparent-grandchild relationship where none previously existed. Instead, section 3104 preserves a relationship allowed by the parents to develop and that requires safeguarding to protect the best interests of the child. While Matthew and Rebekah have broad parenting prerogatives, they are not unlimited and do not extend to denying Riley's best interests in preserving an important and continuing relationship with her paternal grandparents.

In his argument about the presumption against grandparent visitation codified in section 3104, subdivision (e), Matthew essentially casts the presumption as conclusive when he argues that "it is absurd to hold that a grandparent needs no parental permission to have contact with a grandchild if the parent allowed such contact in the past." Although a total lack of past contact will preclude a grandparent visitation petition for lack of a preexisting relationship (§ 3104, subd. (a)(1)), the nature of the preexisting relationship serves to determine whether the petition may be granted, what the grandchild's best interests require, and the type of visitation that might be appropriate.[6]

---

[6] In concluding the trial court properly considered the factors set forth in section 3104, we reject Matthew's assertion the trial court erred simply by citing or considering Firestone and Weinstein, *In the Best Interests of Children* (2004) 42 Family Court Review 203.

Under Matthew's reasoning, even when parents encourage extensive daily grandparent-grandchild contact, the parents may nonetheless terminate the grandparent-grandchild relationship without any consideration of the parent's role in fostering the relationship. We disagree. The extent to which parents encourage a grandparent-grandchild relationship is relevant to overcoming the presumption against granting a grandparent visitation petition. Matthew's change of heart regarding Jeff and Cindy's role in Riley's life does not render unconstitutional the trial court's consideration of his earlier conduct in fostering the grandparent-grandchild relationship.

## V

### *Attorney Fees under Section 2030*

Matthew challenges the award of attorney fees to Jeff and Cindy under section 2030. Section 2030 provides for awards of need based attorney fees "[i]n a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment" based on a party's financial ability to pay fees and for whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2031, subd. (a)(1).) Matthew contends section 2030 does not apply to actions initiated by a grandparent visitation petition under section 3104. However, Matthew himself asked for attorney fees under section 2030 in the trial court. The trial court denied his request for attorney fees under section 2030 and granted Jeff and Cindy's request under the same section.

Having requested fees under section 2030 in the trial court, Matthew is judicially estopped from arguing for the first time on appeal that fees under section 2030 cannot be awarded in this case. " 'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the

22

judicial process.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (*Jackson*), quoting *Cleveland v. Policy Management Systems Corp.* (5th Cir.1997) 120 F.3d 513, 517.) "The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' . . . Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' (*Russell v. Rolfs* (9th Cir.1990) 893 F.2d 1033, 1037.) 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' (Comment, *The Judiciary Says, You Can't Have It Both Ways:  Judicial Estoppel -- A Doctrine Precluding Inconsistent Positions* (1996) 30 Loyola L.A. L. Rev. 323, 327 . . . .)" (*Jackson,* at p. 181.)

Judicial estoppel bars Matthew's challenge to the award of attorney fees under section 2030.  For this reason, we conclude Matthew may not challenge the award of attorney fees under section 2030 after representing to the trial court that such a fee award could and should be made to him.

## VI

### *Sanctions under Section 271*

Matthew challenges the trial court's order that he pay sanctions imposed on him under section 271.  He asserts the "order should be reversed because it will have a chilling effect on parents who seek to defend their constitutional parental rights to care, custody and control of their children."  Matthew asserts that "the grandparents -- represented by counsel -- engaged in heavy-handed, questionable tactics against the parents," and that he and Rebekah should not be punished when they could not afford

23

counsel.  However, Matthew's assertions do not address the basis for the court's imposition of sanctions.

When imposing the sanctions under section 271, the trial court explained that "the parents have been less than collaborative as it relates to the grandparents, and disinclined to further the child's interest in both a relationship with her paternal grandparents . . . ." This explanation followed after the trial court denied Matthew's early request for attorney fees on the grounds of his "obstreperous conduct that has not only increased the length of this process but fees associated with his lack of prudential insight."  The testimony at trial supported this observation.  Cindy testified that "Matthew has a habit of coming to court with a lot of ex partes, which raised our fees tremendously."  Vodrey explained the parents placed obstacles in the way of her evaluation of Riley with her grandparents. Consequently, the trial court's imposition of sanctions is supported by findings and evidence the litigation costs were unnecessarily inflated by obstructionist tactics by the parents.  On this basis, we affirm the imposition of sanctions under section 271.

## VII

### *Order for Anger Management Counseling for Matthew*

Matthew contends the trial court erred in imposing an unlimited anger management counseling order based on the one-year limitation on such orders imposed by section 3190.  He further contends the trial court erred in failing to make the statutory findings for counseling required by subdivision (d)(2) of section 3190.  Matthew's contentions have merit, and we remand this portion of the order.

### A.

### *Section 3190*

Section 3190 provides that the trial court "may require parents or any other party involved in a . . . visitation dispute . . . to participate in outpatient counseling with a licensed mental health professional . . . for not more than one year" if the dispute "poses a

24

substantial danger to the best interest of the child" and that "[t]he counseling is in the best interest of the child." (§ 3190, subds. (a)(1)&(2).) Ordering counseling under section 3190, subdivision (d), requires that "[t]he court, in its finding, shall set forth reasons why it has found both of the following:  [¶]  (1) The dispute poses a substantial danger to the best interest of the child and the counseling is in the best interest of the child.  [¶]  (2) The financial burden created by the court order for counseling does not otherwise jeopardize a party's other financial obligations."

## B.

### *The Trial Court's Order Regarding Counseling for Matthew*

The trial court's statement of decision recounts the court-appointed mediator's conclusion that Matthew "presents as an angry and controlling man.  Although he believes he was mistreated and abused as a child, he later partook of his parents' generosity and financial assistance when it benefited him.  When it didn't, he turned on them, maligned them and kept their granddaughter from them.  This is egregious, and spiteful behavior from a grown man who has accepted so much from his parents.  [¶] . . . [¶]  Possibly, Father is acting out of his untreated mental and/or emotional disorders. Until father is prepared to have a full psychiatric assessment with follow through on any recommendations, only his anger issues will be addressed here.  The anger can be managed and minimized through an anger management course."

Based on this conclusion, the trial court ordered that Matthew, "at his expense, shall participate in individual counseling with a licensed psychotherapist, within thirty (30) days. . . .  Therapy shall continue until discharged, in writing by the clinician." (Fns. omitted.)  The trial court qualified the order by noting it was "not imposing a quantitative measurement of participation (i.e., how many sessions).  Rather, the court is focused on qualitative measurement of success as clinically determined by the counselor that will promote parental collaboration, and proper focus on the child's relationship with each

25

parent." The trial court contemplated that upon completion of Matthew's anger management counseling he would participate in joint counseling with Jeff and Cindy. For the joint counseling, Matthew was ordered to pay one-third of the counseling expense.

## C.

### *Findings*

The trial court's order does not comply with the requirement of section 3190, subdivision (d), to make certain express findings. Specifically, the order makes no express finding whether this dispute poses a substantial danger to the best interest of Riley requiring an order that Matthew participate in counseling is in her best interest. Neither does the order make any finding about whether the financial burden created by the order might jeopardize Matthew's other financial obligations. Consequently, we reverse that portion of the trial court's order that requires him to participate in individual and subsequent joint counseling. On remand, the trial court shall make the findings and set forth the reasons for the findings required under section 3190, subdivision (d).

## D.

### *Duration*

The trial court's order that Matthew participate in individual and joint counseling does not reflect the one-year time limit provided by subdivision (a) of section 3190. Instead, the order continues Matthew's individual and joint counseling indefinitely until discharged by the counselor. If the trial court's findings support a counseling order for Matthew, the court shall limit the order to require that he obtain individual and joint counseling for a period of no more than one year. (§ 3190, subd. (a).)

### DISPOSITION

The orders (1) granting visitation under Family Code section 3104 to plaintiffs Jeffrey and Cynthia Stuard, (2) awarding attorney fees, and (3) imposing sanctions are

26

affirmed.  The order requiring defendant Matthew Stuard to participate in individual and subsequent joint counseling is reversed and remanded.  On remand, the trial court shall determine (1) whether this dispute poses a substantial danger to the best interest of Riley Stuard and counseling for defendant is in her best interest, and (2) whether the financial burden created by requiring defendant to participate in counseling will jeopardize his other financial obligations.  As required by Family Code section 3190, subdivision (d), the trial court shall set forth the reasons for its findings.  If the findings support an order for counseling, the court may require defendant to participate in individual and joint counseling for a cumulative period of not more than one year.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


                                            /s/
                                    HOCH, J.


We concur:


        /s/
NICHOLSON, Acting P. J.


        /s/
MURRAY, J.