Filed 1/2/26  W.H. v. K.M. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| W.H.,<br><br>    Appellant,<br><br>    v.<br><br>K.M.,<br><br>    Respondent. | D085312<br><br><br>(Super. Ct. No. 23FL005272N) |

APPEAL from orders of the Superior Court of San Diego County, Daniel Segura, Judge.  Affirmed.


W.H., in pro. per., for Appellant.

Law Office of Linda Cianciolo and Linda Cianciolo for Respondent.


Appellant W.H. (Grandfather) filed a Petition for Grandparent Visitation (Petition) seeking court-ordered visitation with his then-6-year-old grandson, B.H.  The mother of the child, respondent K.M. (Mother), objected.

Grandfather challenges on appeal the denial of his preemptory challenge of the assigned judge, the mislabeling of a pleading he filed as a

violation of due process, and the trial court's decision denying his Petition for court-ordered visitation with B.H.

Because a petition for a writ is the exclusive avenue for review of rulings on a disqualification of a judge, those orders are unreviewable. Even were we to construe Grandfather's appeal as a writ petition, we would affirm denial of his preemptory and for-cause challenges on the merits. We are unable to evaluate Grandfather's claim that the mislabeling of a pleading as a "miscellaneous" filing violated his right to due process because he failed to include that document in the record. Nonetheless, we conclude Grandfather had a sufficient opportunity to challenge Mother's credibility in another written pleading and at the evidentiary hearing. We further conclude the trial court did not abuse its discretion in denying the Petition, based on its finding that Grandfather had not overcome the rebuttable presumption against court-ordered grandparent visitation when a parent with sole custody objects, as Mother did.

The orders are affirmed.

PROCEDURAL AND FACTUAL BACKGROUND

B.H. was born in 2016 to Mother and Grandfather's son J.H. (Father), who were not married.

In the early years of B.H.'s life, dependency proceedings were initiated, B.H. was removed from Mother's custody, and for a time Grandfather and Grandfather's girlfriend cared for B.H. and were deemed de facto parents. Grandfather unsuccessfully requested visitation with B.H. in the dependency proceeding.

A separate family law matter was initiated between Mother and Father to resolve issues of domestic violence, child custody, and visitation for B.H. Grandfather moved for joinder as a party in that matter. The court found

2

Grandfather did not have standing, denied his motion for joinder, and denied grandparent visitation. That court awarded nearly full custody of B.H. to Mother, with the exception of two hours of virtual visitation per week for Father, and it permitted Mother to relocate to Oklahoma with B.H. The court authorized Grandfather to join in Father's court-ordered virtual visits with B.H., and it ordered Mother to notify Father and Grandfather when Mother and B.H. visit California.

On May 9, 2023, Grandfather initiated this matter by filing a request for order and petition for grandparent visitation (the Petition). The matter was assigned for all purposes to the Hon. Daniel Segura, the same judge who presided over the family court matter. According to Grandfather, on May 9, 2023 he also filed a "Motion to Strike" containing a "detailed rebuttal to the opposing party's sworn declarations."[1] On June 6, 2023, Grandfather filed a "Motion for Immediate Injunction" identifying Judge Segura as the assigned judge. On July 14, 2023, Mother moved to dismiss the Petition. A hearing was held on July 17, 2023, before Judge Segura.

On July 25, 2023, Grandfather filed a peremptory challenge to Judge Segura. Judge Victor Torres, who was not presiding over this case, "inadvertently granted the peremptory challenge in error" in Judge Segura's absence and assigned the matter to Judge Adelaida Lopez. On August 11, 2023, Judge Torres acknowledged his error, struck his order, and referred the peremptory challenge to Judge Segura for decision. That same day, Judge Segura issued an order denying Grandfather's peremptory challenge.

Grandfather filed another peremptory challenge to Judge Segura on August 28, 2023, which was denied the following day.

---

[1] This document was not included in the record on appeal.

In September 2023, Grandfather filed a request for an order in which he sought to disqualify Judge Segura based on the judge's "exhibited biases and an evident lack of impartiality."  The trial court construed this filing as a statement of disqualification and, on February 13, 2024, struck it because Grandfather had not properly served it on the trial court, and it failed to allege a legal basis for disqualification.

On August 26, 2024, Grandfather moved a second time to disqualify Judge Segura for cause.  On August 27, 2024, the trial court struck Grandfather's statement of disqualification as an impermissible repeat challenge and for failing to allege a legal basis for disqualification.

On August 28, 2024, the court conducted an evidentiary hearing on Grandfather's Petition.  After hearing testimony from Grandfather, Grandfather's girlfriend, and Mother, the trial court denied the Petition.

In November 2024, Grandfather filed in Superior Court a motion to vacate judgment, a petition for writ of mandate to disqualify Judge Segura, a motion for an appointed attorney, and a notice of appeal of the denial of the Petition.

In December 2024, the court issued written findings and an order on denial of the Petition.

DISCUSSION

I. *Judicial Disqualification*

A party who believes the trial judge is biased may seek disqualification by filing a peremptory challenge or a challenge for cause.  (Code Civ. Proc.,[2] §§ 170.1, subd. (a)(6)(A)(iii); 170.3, subd. (c)(1)); 170.6, subd. (a)(2).)  If the party's effort to disqualify the judge is unsuccessful, the only avenue for

---

[2]  Further undesignated statutory references are to the Code of Civil Procedure.

4

review is a writ petition. (§ 170.3, subd. (d); *People v. Panah* (2005) 35 Cal.4th 395, 444 ["As we have repeatedly held, the statute means what it says: . . . section 170.3, subdivision (d) provides the exclusive means for seeking review of a ruling on a challenge to a judge, whether the challenge is for cause or peremptory."].)

Grandfather's failure to file a writ petition in this court means he forfeited his exclusive avenue for review. (*Olmstead v. West* (1960) 177 Cal.App.2d 652, 654–655 [appellate court must dismiss an appeal from a judgment which is not appealable].)

Because a writ is the exclusive remedy for his claim, and Grandfather filed in Superior Court a pleading seeking a "writ of mandate compelling the disqualification of Judge Daniel Segura," we could exercise our discretion to construe Grandfather's appeal as a petition for a writ of mandate. (See *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367 [appellate court may treat an appeal as a petition for writ in circumstances compelling enough to indicate the propriety of a petition for a writ in the first instance].) We decline to do so. Even if we did so, we would affirm because Grandfather's peremptory challenges were untimely, and his challenges for cause were untimely and failed to allege a sufficient legal basis for disqualification.

We would apply a de novo standard of review when the correctness of a ruling on a peremptory challenge turns on the application of law to undisputed facts. (*Swift v. Superior Court* (2009) 172 Cal.App.4th 878, 882; *Jane Doe 8015 v. Superior Court* (2007) 148 Cal.App.4th 489, 493.)

When a judge has been assigned to a case for all purposes, a party must bring a motion to challenge the judge within 15 days of the all-purpose assignment. (§ 170.6, subd. (a)(2).) The clock begins to run when the party

receives notice of the all-purpose assignment. (*Jones v. Superior Court* (2016) 246 Cal.App.4th 390, 402.) The timing rules are strictly enforced. "[O]ur courts 'have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' [Citation.]" (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1033.)

Judge Segura was assigned to Grandfather's case for all purposes on May 9, 2023, when Grandfather initiated this case by filing the Petition. The register of actions contains a "Notice of Case Assignment" dated the same day. (See Super. Ct. San Diego County, Local Rules, rules 5.1.1, 5.2.1.)[3] Thus, the deadline for a peremptory challenge to Judge Segura was 15 days later, on May 24, 2023. Demonstrating that he was aware of the assignment, Grandfather identified Judge Segura on the pleading dated June 6, 2023.

Grandfather points to section 170.6, subdivision (a)(2), which provides that, if a party has not yet appeared when the all-purpose assignment occurs, a peremptory challenge is due within 15 days of the party's first appearance. Grandfather contends the clock only started to run when he first appeared in court at the hearing on July 17, 2023.

Grandfather's position ignores the principle that a party's first appearance is when he submits to the jurisdiction of the court. (*Brown v. Swickard* (1985) 163 Cal.App.3d 820, 826–827.) In the case of a plaintiff, that initial submission occurs when he originally files his complaint because " 'the plaintiff by bringing the action, submits himself to the jurisdiction of the court with respect to his cause of action.' " (*Ibid*.) Consequently, " '[t]he

---

3    In family law matters, "[n]ew cases are assigned to a specific judicial officer for all purposes. The petitioner will receive a Notice of Case Assignment when the petition is filed. A copy of this Notice must be served on the respondent with the petition." (Super. Ct. San Diego County, Local Rules, rule 5.2.1.)

plaintiff appears when he files his complaint subscribed by himself or his attorney.' " (*Ibid.*)

Thus, while Grandfather may not have physically appeared in court until July 17, 2023, he first appeared in this case by filing his Petition on May 9, 2023, thereby submitting to the Superior Court's jurisdiction and seeking its assistance in obtaining relief. That is also when Judge Segura was assigned for all purposes. Grandfather's peremptory challenge dated July 25, 2023, was thus untimely, and Judge Torres improperly granted it. Because Judge Segura remained on the case, this error ultimately had no effect.[4]

Grandfather's second peremptory challenge, filed August 28, 2023, violated the rule against successive challenges, and, like the first, it was untimely (§ 170.6, subd. (a)(4).) It was properly denied. Grandfather's two

---

[4] We do not evaluate Judge Torres's August 8, 2023 order striking his own grant of Grandfather's untimely peremptory challenge, or Judge Segura's order denying the challenge, other than to note that these orders resulted in Judge Segura remaining on the case, which would have been the result had the untimely peremptory challenge been properly denied in the first place. (But see *Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 64 [judge who is not the target of the peremptory challenge has inherent power to reconsider and correct his own erroneous ruling on a peremptory challenge].)

challenges for a cause were appropriately stricken for untimeliness[5] and for failing to state a legal cause for disqualification.[6]  (§ 170.4(d).

II. *Labeling of Grandfather's Pleading*

Grandfather next contends that the labeling of a "Motion to Strike" he filed on May 9, 2023 as a "miscellaneous" filing violated his right to due process and demonstrated the judge's bias against him.

Due process of law requires a party be given notice and opportunity to be heard before relief is granted against the party (*Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 77-78 (*Midway Venture*).)

But there is no pleading in the record with the date and title Grandfather references, so we are unable to evaluate whether there was some error in how such a pleading was filed.  It is a "cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)  To overcome

---

[5]    These challenges must be brought "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification."  (§170.3, subd. (c)(1).)  But Grandfather alleged "Judge Segura exhibited a concerning bias against" Grandfather and Father in the family law case that was pending at least as of November 2022, and that the judge's bias resurfaced in the current case.  Grandfather's concern about bias thus arose long before he made his challenge for cause in August 2023.

[6]    Expressions of the court's opinion, based on observations of the witnesses and evidence, do not demonstrate bias, nor do a trial court's numerous rulings against a party.  (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 588 [judge's credibility assessment, interpretation of evidence, and evidentiary rulings do not show bias]; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219-1220 [judge's statements in making ruling based on evaluation of evidence and arguments do not establish bias]); *People v. Pearson* (2013) 56 Cal.4th 393, 447 [numerous rulings against a party do not show bias].)

this presumption, the appellant bears the burden of providing an adequate record to affirmatively demonstrate error.  (*Ibid.*; *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498 [incomplete record is construed against appellant].)  If the appellant cannot show error in the record, the presumption of correctness requires us to affirm the order.  (*Foust*, at p. 187.)

Even if Grandfather's pleading were filed as "miscellaneous" rather than, as Grandfather urges, a "Rebuttal," "Responsive Declaration," or "Motion," we cannot identify any consequences, much less the "severe legal consequences" Grandfather claims, that flowed from this designation. Grandfather argues the mislabeling obscured Grandfather's position and resulted in the trial court relying on the opposing party's declarations without considering Grandfather's rebuttal.  We find no support for this contention.  There were no declarations filed by Mother in this case prior to May 9 when Grandfather filed his Petition and also filed his "rebuttal" pleading.  In this regard, there was nothing for Grandfather to rebut at the time he initially filed his pleading.

Moreover, the court had before it Grandfather's June 6 Motion for Immediate Injunction, in which Grandfather referenced his May 9 pleading (describing it as a motion for perjury) and alleged that Mother made false statements in her November 2022 filing in the family law case.  Grandfather attached as an exhibit an email from Mother, which, Grandfather argued, was "riddled with lies and misinformation" and demonstrated how Mother "manipulates and lies."  At the evidentiary hearing he cross-examined Mother and presented his own testimony and that of another witness to show that events did not occur as Mother said they did.  In other words,

9

Grandfather had the opportunity to present his credibility concerns about Mother to the trial court.

Ultimately the trial court's decision did not turn on the credibility of any of the witnesses, but on the legal presumption against court ordered grandparent visitation when a parent with custody objects.

Accordingly, we see no basis to conclude that the mislabeling of a pleading, if it occurred, violated Grandfather's right to due process. He had the opportunity to be heard, through his various filings and at the evidentiary hearing, and we conclude the trial court's judgment was rendered based on its evaluation of the evidence on each side, its findings of fact, and its conclusions of law. (*Midway Venture, supra,* 60 Cal.App.5th at p. 78.)

III. *Denial of the Petition*

Lastly, Grandfather contends that the court order denying his Petition terminated all contact with his grandson, which "violate[d] principles of fairness, due process, and statutory protection for grandparent visitation." We conclude the trial court did not abuse its discretion.

"Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory." (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.) Family Code section 3104 permits grandparents to petition for visitation if the grandchild's parents are not married, are living separately, or if certain other conditions are met. (*Ibid.*)

Family Code section 3104 provides in part: "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child. (2) Balances the interest of the child in having visitation

10

with the grandparent against the right of the parents to exercise their parental authority." (Fam. Code, § 3104, subd. (a); see *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 777-778) (*Stuard*).) Family Code section 3104, subdivision (f) establishes a rebuttable presumption that grandparent visitation is not in the best interest of a minor child if a parent with sole legal and physical custody objects to such visitation. (Fam. Code, § 3104, subd. (f); *Stuard, supra,* 244 Cal.App.4th at p. 778). By making this presumption rebuttable, "the statutory scheme recognizes 'the importance of family ties and the value of a relationship between grandparents and grandchildren.' " (*Stuard, supra,* 244 Cal.App.4th at p. 778.) Nonetheless, " 'the key to understanding the Legislature's intent is to remember the primary impetus behind the provision was not the strengthening of grandparental visitation rights, but the protection of the best interest of the child.' " (*Stuard*, *supra,* 244 Cal.App.4th at p. 779.)

We review visitation orders for abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) Reversal is only warranted "if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610; *Burgess*, at p. 32.) The complaining party bears the burden to establish an abuse of discretion. (*Stuard, supra*, 244 Cal.App.4th at p. 786.)

As to the first prong of Family Code section 3104, we agree with the trial court's finding that there was a pre-existing relationship between grandfather and B.H., although the child was then 8 years old and had moved to another state and was living with his mother. Grandfather and his girlfriend had cared for B.H. for stretches between March 2018 and June 2019, before B.H. turned 3 years old. By the time of the evidentiary hearing

11

in August 2024, Mother and B.H. were living permanently in Oklahoma, but Grandfather had visits with B.H. in December 2022 and May 2023, and Mother continued to facilitate virtual and in person visits with Grandfather. The parties did not dispute Grandfather's assertion that B.H. enjoyed these visits and missed seeing Grandfather.

There was also substantial evidence to support the court's finding that Grandfather had not overcome the rebuttable presumption in Family Code section 3104, subdivision (f), against court ordered visitation where Mother, who has sole legal and physical custody of B.H., objected to such an order.

The court focused on how Mother was exercising her parental authority over B.H. The trial court found there were no negative allegations about Mother's parenting. Instead, Grandfather's accusations of dishonesty against Mother stemmed from their disagreement over how past visits occurred. Mother's other disputes with Grandfather concerned such matters as how much screen time B.H. should have, where B.H. slept while in Grandfather's care, whether B.H. was allergic to cats and was given his allergy medication, and what gifts could be given to B.H. Mother believed Grandfather disregarded her requests when it came to B.H.'s care and tried to usurp her authority as a parent. The court found there was "clear conflict" between Mother and Grandfather about how Grandfather "will be allowed to exercise visitation and what parameters Mother wants to impose." Given these disputes between a custodial parent and a nonparent over how to raise the minor child, the court did not abuse its discretion in relying on the presumption and ruling that court-ordered visitation was not in the best interest of the child in light of Mother's right to exercise her parental authority over B.H. (Fam. Code, § 3104, subds. (a)(2); (f).)

12

## DISPOSITION

The orders are affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.