FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANDHINI RAIDOO, M.D., M.P.H.; BLISS KANESHIRO, M.D., M.P.H., on behalf of themselves and their patients, | No. 21-16559 |
| | D.C. No. 1:21-cv-00009 |
| *Plaintiffs-Appellees*, | |
| v. | OPINION |
| DOUGLAS MOYLAN, in his official capacity as Attorney General of Guam; NATHANIEL BERG, M.D., in his official capacity as Chair of the Guam Board of Medical Examiners; PHILIP FLORES, in his official capacity as Vice-Chair of the Guam Board of Medical Examiners; ARANIA ADOLPHSON, M.D., in her official capacity as a member of the Guam Board of Medical Examiners; LUIS G. CRUZ, M.D., in his official capacity as a member of the Guam Board of Medical Examiners; ANNETTE DAVID, M.D., M.P.H., in her official capacity as member of the Guam Board of Medical Examiners; JOLEEN AGUON, M.D., in her official capacity as member of the | |

Guam Board of Medical Examiners;
SCOTT SHAY, M.D., in his official
capacity as a member of the Guam
Board of Medical Examiners,

*Defendants-Appellants*.

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted February 16, 2023
Honolulu, Hawaii

Filed August 1, 2023

Before:  Carlos T. Bea, Daniel P. Collins, and Kenneth K.
Lee, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Abortion

The panel vacated the district court's preliminary injunction enjoining enforcement of the informed-consent requirement in Guam's Women's Reproductive Health Information Act, which requires that women seeking abortions have an in-person meeting with a physician, or a qualified agent of the physician, who must disclose certain medical as well as other information.

Plaintiffs are Guam-licensed OBGYN physicians in Hawaii who wish to provide abortion services to Guam patients through telemedicine. They point out that women in Guam seeking abortions must obtain chemical abortifacients via telemedicine, given the current lack of doctors who perform abortions in Guam.

Applying rational basis review, the panel concluded that the in-person informed consent requirement does not violate the Due Process Clause because it furthers Guam's legitimate governmental interests in preservation of potential life, protection of maternal health, and promotion of the integrity of the medical profession.

The panel rejected plaintiffs' as-applied challenge under the Due Process Clause, in which plaintiffs argued that the in-person consultation requirement undermines informed consent because of the possibility that non-medical personnel may provide the required medical

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

disclosures. The panel held that the requirement does not undermine informed consent because it does not mandate that a non-medical professional provide the in-person medical disclosures, nor does it prevent the treating telemedicine doctor from providing medical information to the patient; it merely requires that patients receive certain information in person before receiving an abortion.

Finally, the panel rejected plaintiffs' argument that Guam's in-person informed-consent law violates their equal protection rights because it irrationally treats physicians who provide abortions differently than similarly situated telemedicine providers. Applying rational basis review, the panel held that Guam can require an in-person consultation for abortions because, unlike other medical procedures, abortion implicates fetal life in addition to the patient's health, and the in-person requirement bears a reasonable relationship to the legitimate governmental interest of safeguarding fetal life.

## COUNSEL

Jordan L. Pauluhn (argued) and Heather M. Zona, Assistant Attorneys General; James L. Canto II, Deputy Attorney General; Leevin Taitano Camacho, Attorney General of Guam; Office of the Attorney General, Litigation Division; Tamuning, Guam; for Defendants-Appellants.

Alexa Kolbi-Molinas (argued), Meagan M. Burrows, and Rachel M. Reeves, American Civil Liberties Union Foundation, New York, New York; Vanessa L. Williams, Law Office of Vanessa L. Williams PC, Hagatna, Guam; Chelsea G. Tejada, ACLU Reproductive Freedom Project, New York, New York; for Plaintiffs-Appellees.

# OPINION

LEE, Circuit Judge:

In *Dobbs v. Jackson Women's Health Organization*, the Supreme Court made clear that the Constitution does not guarantee a right to an abortion because it is neither enumerated in the constitutional text nor deeply rooted in our nation's history. 142 S. Ct. 2228 (2022). So now the people's representatives—not judges—decide whether to allow, ban, or regulate abortions. And in turn, courts play only a modest and minor role: We merely apply a highly deferential rational basis review in assessing the constitutionality of an abortion-related law.

Under this new legal landscape, we vacate the district court's preliminary injunction against Guam's in-person informed-consent law. That law requires women seeking abortions to have an in-person meeting with a physician—or a qualified agent of the doctor—who must disclose certain medical as well as other information (*e.g.*, medical risks, adoption opportunities) to a patient before she has an abortion. Guam has legitimate interests in requiring an in-person consultation: the consultation can underscore the medical and moral gravity of an abortion and encourage a robust exchange of information. As we learned during the pandemic, a telephonic or video meeting may be a poor substitute for an in-person meeting, whether it be in the classroom, courtroom, or clinic.

Plaintiffs point out that women in Guam seeking abortions must obtain chemical abortifacients via telemedicine, given the current lack of doctors who perform abortions on the island. Plaintiffs argue that the law may thus thwart informed consent because the treating doctor off

the island may have to pick a non-medical agent to provide the in-person medical disclosures. But nothing in the law prevents the treating doctor from providing the same or additional information as that required in the in-person meeting when the doctor meets with patient via videoconference or phone. The law sets a minimum, not a maximum, disclosure requirement, and does not prohibit the doctor from communicating additional information that the doctor believes is required under another law or professional obligation. In short, Guam's law passes muster under the low bar of rational basis review.

Plaintiffs' equal protection challenge fails as well. Guam can require an in-person consultation for abortions—but not for other medical procedures—because abortion is different, as it involves what *Dobbs* described as the "States' interest in protecting fetal life." *Id.* at 2261. People across the United States and its territories may in good-faith strongly disagree on abortion, but the people of Guam can make the policy choice to treat abortion differently from other medical procedures.

## I. BACKGROUND

### A. <u>Guam requires in-person informed consent for abortions.</u>

In 2012, Guam enacted the Women's Reproductive Health Information Act, which requires in-person informed consent from women seeking abortions. 10 Guam Code Ann. § 3218.1. The statute provides that "consent to an abortion is voluntary and informed if and only if" certain conditions are met. 10 Guam Code Ann. § 3218.1(b). This statute has two key provisions governing the disclosure of information.

First, as relevant here, the woman seeking an abortion must receive certain  medical information in person at least 24-hours before the procedure.  10 Guam Code Ann. § 3218.1(b)(1).  The required medical information includes "medically accurate information that a reasonable person would consider material to the decision of whether or not to undergo the abortion," such as immediate and long-term medical risks associated with abortion, the likely gestational age of the fetus, and medical risks associated with carrying the child to term.  *See* 10 Guam Code Ann. § 3218.1(b)(1)(B)–(E).

Second, section (b)(2) requires in-person disclosure of information about social services and other assistance available to an expectant mother.  10 Guam Code Ann. § 3218.1(b)(2).  For example, a woman seeking an abortion must be informed of medical assistance benefits, public assistance for her child, adoption services, and the father's liability for child support.  *See* 10 Guam Code Ann. § 3218.1(b)(2)(A)–(F).

Relevant here, both sections (b)(1) and (b)(2) require the physician who will perform the abortion—or a "qualified person"—to provide the information in person.  10 Guam Code Ann. § 3218.1(b)(1), (2).  The statute defines a "qualified person" as "an agent of a physician who is a psychologist, licensed social worker, licensed professional counselor, registered nurse, or physician."  10 Guam Code Ann. § 3218.1(a)(13).

## B. No doctor in Guam will perform an abortion but women can obtain medication abortions via telemedicine.

In 2018, the last physician known to provide abortions in Guam retired. And no physician has since been known to provide abortions on the island.

In 2017, the Guam Attorney General concluded that Guam-licensed physicians located off the island can provide medical care to patients in Guam using telemedicine. *See* Guam Att'y Gen. Op. No. 17-0531, 2–3 (Nov. 6, 2017). In 2021, the Guam Attorney General specifically stipulated in another lawsuit that Guam law permits the use of telemedicine to provide medication abortions.

Plaintiffs Shandhini Raidoo, M.D., M.P.H., and Bliss Kaneshiro, M.D., M.P.H., are Guam-licensed OBGYN physicians in Hawaii who wish to provide abortion services, including medication abortions, to Guam patients through telemedicine. They believe that they are the only doctors who are willing to provide abortion services to women in Guam. But Plaintiffs acknowledge that supportive physicians in Guam are "willing to provide pre- and post-abortion care." Guam law requires in-person informed-consent for abortions, even if women use chemical abortifacients obtained via telemedicine.

## C. The district court enjoins the Guam law in reliance on *Roe* and *Casey*.

In January 2021, Plaintiffs filed a complaint alleging that the in-person informed-consent requirement violates their patients' right to an abortion under *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). The complaint

also alleged that the law violates the Equal Protection Clause of the Fourteenth Amendment.

A week later, Plaintiffs moved for a preliminary injunction. And in September 2021, the district court enjoined enforcement of the in-person informed-consent provision, ruling that the law imposed an "undue burden" on a woman's right to an abortion under *Casey*. It found that Guam failed to show any "real justification or benefits of the in-person requirement" while the burdens imposed were "substantial."

Guam then appealed the district court's grant of a preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

## II. STANDARD OF REVIEW

We review the district court's grant of a preliminary injunction for abuse of discretion. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1046 (9th Cir. 2021). We review legal questions de novo, *Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991), and factual findings for clear error, *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc).

To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction serves the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24.

## III. DISCUSSION

We vacate the district court's grant of a preliminary injunction enjoining enforcement of the in-person informed-consent requirement of 10 Guam Code Ann. § 3218.1.

After the district court issued its order, the Supreme Court announced in *Dobbs* that abortion statutes are no longer subject to *Casey*'s undue burden standard. *Dobbs*, 142 S. Ct. at 2242. Rather, an abortion-related law must only survive rational basis review. *Id.* at 2284. And under that deferential standard, Plaintiffs cannot show a likelihood of success on the merits because Guam has legitimate interests in imposing an in-person requirement and the law is rationally related to those goals.

### A. We apply rational basis review in assessing Guam's in-person informed-consent requirement for abortions.

The Supreme Court in *Dobbs* overturned *Roe* and *Casey*, rejecting a constitutional right to an abortion and casting aside *Casey*'s undue burden test for assessing abortion laws. *Dobbs*, 142 S. Ct. at 2242, 2283. Now, abortion laws—"like other health and welfare laws"—are decided by the people and their elected representatives, and are generally subject only to rational basis review by the courts. *Id.* at 2284.

Rational basis review is "a paradigm of judicial restraint," *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993), that is "highly deferential to the government," *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018) (citing *United States v. Hancock*, 231 F.3d 557, 566 (9th Cir. 2000)). We must uphold a law under rational basis review if the government has a legitimate interest in enacting the statute, and the law

is rationally related to that interest. Under this deferential standard, laws enacted by the people are "entitled to a 'strong presumption of validity.'" *Dobbs*, 142 S. Ct. at 2284 (internal citation omitted). Challengers of the law "have the burden 'to negative every conceivable basis which might support it.'" *Beach Commc'ns, Inc.*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

It matters not that judges may think the law unwise or believe it could have been drafted more narrowly or differently. Indeed, a law survives rational basis review so long as some conceivable legitimate purpose could have supported it—regardless of a legislature's actual purpose in enacting a statute. *Beach Commc'ns, Inc.*, 508 U.S. at 315. The legislature does not need proof that the statute will achieve its asserted purpose: a statute will pass muster if the purpose of the law rests on "rational speculation," even if the speculation is "unsupported by evidence or empirical data." *Id.* A law thus survives rational basis review even if it requires "rough accommodations" that may be "illogical" or "unscientific," and that may even appear "unjust and oppressive." *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69–70 (1913).

## B. <u>Guam's in-person informed-consent law survives rational basis review.</u>

In assessing the constitutionality of Guam's in-person informed-consent requirement, we examine whether the law furthers any legitimate governmental purpose and is rationally related to that goal. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). We may find a law unconstitutional under rational basis review, for example, if the means employed are "directly contrary to the [law's] basic purpose" or if the

means are "wholly unconnected to any legitimate state interest." *Silveira v. Lockyer*, 312 F.3d 1052, 1089–91 (9th Cir. 2003). Guam's law easily meets that bar.

### 1. Guam has valid and legitimate state interests in requiring an in-person consultation before a patient undergoes an abortion.

We reject Plaintiffs' argument that an in-person informed-consent requirement for women seeking an abortion is not rationally connected to any legitimate governmental interest.

Guam identifies three legitimate purposes that the in-person requirement furthers: (1) preservation of "potential life," (2) protection of maternal health, and (3) promotion of the integrity of the medical profession. Guam contends that a "private, in-person setting is the appropriate and solemn setting for a patient to fully appreciate the information being provided," and the "same level of formality is not present when the information is being provided over video conferencing" or other similar media.

Each of Guam's asserted interests constitutes a legitimate governmental interest. The Supreme Court has recognized that legitimate governmental interests include "respect for and preservation of prenatal life at all stages of development; the protection of maternal health and safety; . . . [and] the preservation of the integrity of the medical profession." *Dobbs*, 142 S. Ct. at 2284. This case therefore turns on whether Guam's in-person informed-consent law is rationally related to any of those interests. We believe it is.

Guam could reasonably conclude that communication in a face-to-face setting has a different impact than in virtual

spaces.[1]  It could rationally determine that face-to-face meetings can facilitate clearer communication, as well as enhance the ability to read body language and other non-verbal cues.[2]  And it could likewise reasonably believe that in-person settings encourage more frank and robust discussions, enable connectedness between those having the discussion, and ensure a more focused and undistracted setting.[3]

---

[1] *See, e.g.*, Anne Bowen Poulin, *Criminal Justice and Videoconferencing Technology: The Remote Defendant*, 78 Tul. L. Rev. 1089, 1124–25 (2004) (explaining how video interactions versus in-person interactions can affect how a person acts or is perceived to be acting).

[2] Ed Spillane, *The End of Jury Trials: Covid-19 and the Courts*, 18 Ohio St. J. Crim. L. 537, 542 (2021) (stating that "there is a difference between in-person interaction and virtual interactions" and noting that "[c]hildren testifying via remote closed-circuit television have been found to be less credible and accurate than children testifying in-person according to a mock jury"); Elizabeth G. Thornburg, *Observing Online Courts: Lessons from the Pandemic*, 54 Fam. L.Q. 181, 202–03 (2020) (explaining how presentation and argument is received differently in person as compared to over Zoom).

[3] *See, e.g.*, Stephanie Riegg Cellini, *How does virtual learning impact students in higher education?*, Brookings: Brown Center Chalkboard (August 13, 2021) (explaining that online learning often leads to "negative learning impacts, reduced course completion, and lack of connection with other students and faculty" which "could ultimately reduce college completion rates"); *see also* Kelli A. Bird, Benjamin L. Castleman & Gabrielle Lohner, *Negative Impacts from the Shift to Online Learning During the COVID-19 Crisis: Evidence from a Statewide Community College System.*, 8 AERA Open 1, 3 (2022) ("The lack of in-person interaction in online courses can lead to a sense of isolation and disconnectedness from a learning community, and can make it more difficult for students to engage with and learn from peers and instructors." (citation omitted)).

It is thus reasonable for Guam to prefer an in-person meeting before a pregnant woman moves forward with the weighty decision of having an abortion. For example, an in-person meeting can advance the state's goal of protecting the health of the mother because a face-to-face meeting can feel less rushed and more intimate than a phone call or a virtual meeting. A pregnant woman may ask more follow-up questions in a face-to-face meeting, leading to a more detailed discussion about the potential impact of an abortion (or giving birth) on her health. *See Dobbs*, 142 S. Ct. at 2284 ("legitimate interests include . . . the protection of maternal health and safety").

Similarly, in the more solemn context of a face-to-face meeting—unlike a Zoom call—a pregnant woman may decide against an abortion after having a candid conversation at the clinic about the gestational age of her fetus and concluding that the fetus represents human life. *See* 10 Guam Code Ann. § 3218.1(b)(1)(B)–(F) (requiring, among other things, disclosure of gestational age of her fetus). Or a pregnant woman may take more time to reconsider an abortion after learning of social welfare programs that assist mothers with newborns. *See* 10 Guam Code Ann. § 3218.1(b)(2)(A)–(F) (requiring disclosure of information, among other things, about medical assistance benefits, public assistance for her child, adoption options, and the father's liability for child support). It also may turn out that the in-person meeting does not affect a woman's decision and may even reaffirm her conviction to move forward with an abortion. Regardless of the law's actual impact on a given woman's decision, we cannot deny that the in-person requirement could rationally serve a legitimate state interest in protecting fetal life. *Dobbs*, 142 S. Ct. at 2284.

Finally, a face-to-face meeting can further the legitimate state goal of "the preservation of the integrity of the medical profession." *Id.* While telemedicine has been a boon for many patients, it can implicate certain ethical issues for physicians. *See*, *e.g.*, Danielle Chaet, Ron Clearield, James E. Sabin & Kathryn Skimming, *Ethical Practice in Telehealth and Telemedicine*, 32 J. Gen. Internal Med. 1136 (2017) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5602756/. The ethical questions can range from privacy protection (*e.g.*, virtual calls may not be as secure as a meeting in a doctor's office) to more serious problems (*e.g.*, questions about transparency and informed consent in a potentially more rushed virtual setting). *Id.* Guam's law could potentially place a guardrail against such potential problems.

In sum, so long as the law rests on "rational speculation," we must uphold it under rational basis review. *Beach Commc'ns, Inc.*, 508 U.S. at 315. Guam has met that low legal bar of offering a rational basis for requiring an in-person consultation before a pregnant woman moves forward with an abortion. Ultimately, we cannot "substitute [our] social and economic beliefs for the judgment of legislative bodies." *Dobbs*, 142 S. Ct. at 2284.

### 2. Plaintiffs' as-applied challenge fails because enforcement of the in-person requirement does not undermine informed consent.

Plaintiffs also offer a more nuanced argument that the in-person consultation requirement undermines informed consent here because of the possibility that non-medical personnel may provide the required medical disclosures. This argument, too, fails.

Informed consent is grounded in "the patient's interest in achieving his [or her] own determination on treatment," *Canterbury v. Spence*, 464 F.2d 772, 787 (D.C. Cir. 1972), and "is meant to ensure that each patient has the information she needs to meaningfully consent to medical procedures." *Stuart v. Camnitz*, 774 F.3d 238, 251 (4th Cir. 2014) (cleaned up). Informed consent thus generally imposes a duty to disclose all material facts related to a patient's treatment or procedure. *See, e.g.*, *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 522 (9th Cir. 1984).

Because no physicians currently provide abortion services in Guam, Plaintiffs contend that the in-person requirement undermines the very purpose of Guam's informed-consent statute to provide "complete and accurate information material to her decision to undergo an abortion." Guam Pub. L. 31-235 (2012). Plaintiffs assert that Guam's law would effectively mean that a Guam-based counselor, psychologist, or social worker—not the treating physician— would convey medical information to a woman considering an abortion.

But Guam's law does not mandate that a non-medical professional provide the in-person medical disclosures, nor does it prevent the treating telemedicine doctor from providing medical information to the patient. Indeed, doctors generally have an ethical duty to patients to provide all relevant information and answer questions. *See, e.g.*, *Harbeson*, 746 F.2d at 522; *see also* Committee on Ethics, American College of Obstetricians and Gynecologists, *Informed Consent and Shared Decision Making in Obstetrics and Gynecology*, 137 Obstetrics & Gynecology e34, e35 (2021) (Committee Opinion No. 819) (stating that "[m]eeting the ethical obligations of informed consent requires that an obstetrician–gynecologist gives the patient

adequate, accurate, and understandable information"). In other words, Guam's statute sets a minimum disclosure requirement for informed consent, not a maximum. It does not prevent the treating doctor from providing the same information or more information; it merely requires that patients receive certain information in person before receiving an abortion. *See generally* 10 Guam Code Ann. § 3218.1.

Plaintiffs imply that Guam's informed-consent statute could be more effective if it required a physician to provide the state-mandated information. But it does not matter under rational basis review that the "fit between [the] means and [the] ends" of the statute may be "imperfect": "courts are compelled" to uphold the statute if it bears a rational relationship to some legitimate governmental purpose. *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (cleaned up). And Guam's informed-consent statute bears a rational relationship to the preservation of fetal life and health of the mother because an in-person requirement ensures a more intimate setting for a woman to receive information before she makes the final decision to terminate fetal life.

In any event, it is unclear from the record that Guam patients will receive informed-consent information from only non-medical professionals. To start, the law does not require a non-medical professional to provide the medical information. The treating physician chooses his or her qualified agent to provide the information, and presumably the doctor will select the appropriate person under the patient's unique circumstances. As Plaintiffs themselves state, "there is nothing intrinsically unreasonable about a physician delegating the responsibility for the informed

consent conversation to another physician or health care professional who is sufficiently knowledgeable about the relevant treatment or procedure to facilitate the informed consent process."

Further, Plaintiffs' declarations make clear that there are "multiple supportive physicians in Guam who are willing to provide pre- and post-abortion" care, even if they do not want to personally perform abortions.  Put another way, nothing in the record shows that those same physicians are unwilling to provide the state-mandated informed-consent information to patients.[4]   In the end, Plaintiffs have not met their burden "to negative every conceivable basis which might support" the law.  *Beach Commc'ns, Inc.*, 508 U.S. at 315.

In short, the in-person requirement does not violate the Due Process Clause as it furthers Guam's legitimate state interests and does not undermine informed consent.

### 3. Plaintiffs' equal protection claim also fails because abortion is meaningfully different from other medical procedures.

Finally, Plaintiffs assert that Guam's in-person informed-consent law violates their equal protection rights because it irrationally treats physicians who provide abortions "differently than similarly situated telemedicine providers."  That claim also fails.

---

[4] At oral argument, Plaintiffs stated for the first time that the physicians who provide pre- and post-abortion care would not be willing to provide in-person consultations because they would have to formally associate themselves with abortion providers and that they refuse to do so.  But the record is silent about this contention.

We review equal protection challenges under rational basis unless the law "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Heightened scrutiny does not apply here because abortion is not a fundamental right, and no suspect class is at play. *See United States v. Whitlock*, 639 F.3d 935, 940 (9th Cir. 2011).

Under rational basis review, a legislative "classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Gallinger v. Becerra*, 898 F.3d 1012, 1017 (9th Cir. 2018) (emphasis omitted) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Put another way, a law that differentiates between similarly situated groups is constitutional if it "bears a reasonable relationship to a legitimate governmental interest." *United States. v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001).

Even assuming that doctors who perform abortions are otherwise similarly situated to doctors who perform other medical services, it was rational for the Guam legislature to treat them differently because abortion presents different considerations than other medical procedures. Unlike other medical procedures, abortion implicates fetal life in addition to the patient's health. *See Dobbs*, 142 S. Ct. at 2277 ("'[A]bortion is a unique act' because it terminates 'life or potential life.'"); *Harris v. McRae*, 448 U.S. 297, 325 (1980) ("Abortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life."). The in-person requirement "bear[s] a reasonable relationship to [the] legitimate governmental interest" of safeguarding fetal life. *Whitlock*, 639 F.3d at 940 (cleaned up). Guam's law thus

survives rational basis review and does not violate the Equal
Protection Clause.

## IV. CONCLUSION

As the Supreme Court has instructed, abortion policy is
best left to the people's representatives. *Dobbs*, 142 S. Ct.
at 2243. And when the legislature, as it must, "engage[s] in
a process of line-drawing," *United States R.R. Ret. Bd. v.
Fritz*, 449 U.S. 166, 179 (1980), the Supreme Court has
routinely emphasized that the legislature "must be allowed
leeway" in its approach, *Beach Commc'ns, Inc.*, 508 U.S. at
316. Guam can enact laws that it believes are best for its
people, even if some people might strenuously oppose such
laws or think them unwise.

We hold that Plaintiffs have failed to show a likelihood
of success on the merits that the in-person informed-consent
requirement of 10 Guam Code Ann. § 3218.1 fails rational
basis review. We thus vacate the district court's grant of a
preliminary injunction. *Garcia v. Google, Inc.*, 786 F.3d
733, 740 (9th Cir. 2015) (en banc).

**VACATED.**