Filed 12/19/23  P. v. Collins CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097619 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F10648) |
| v. | |
| JOHNNY PAUL COLLINS, | |
| Defendant and Appellant. | |

Defendant Johnny Paul Collins appeals from an order denying his motion for a proceeding to preserve youth-related mitigating evidence for a future youth offender parole hearing under Penal Code section 3051.[1]  Defendant concedes that he is statutorily ineligible for a youth offender parole hearing under section 3051 because he was sentenced to life without parole (LWOP) for a special circumstance murder he committed when he was 24 years old.  However, he contends this exclusion of young adult LWOP

---

[1]    Undesignated section references are to the Penal Code.

1

offenders from the youth offender parole process violates equal protection and constitutes cruel and unusual punishment. We disagree with defendant's contentions and therefore affirm.

PROCEDURAL BACKGROUND

In 1998, when defendant was 24 years old, he murdered Sim Yee during a store robbery. After a jury trial, defendant was convicted of one count of robbery (§ 211) and one count of first degree murder (§ 187, subd. (a)—count one) with a robbery-murder special-circumstance finding. (§ 190.2, subd. (a)(17)(A).) In April 2000, defendant was sentenced for the special circumstance murder to life in prison without the possibility of parole. Defendant's sentence for the robbery was stayed pursuant to section 654. Defendant appealed and we affirmed the trial court's judgment on direct appeal. (*People v. Collins* (Jan. 13, 2003, C035384 [nonpub. opn.].)

In October 2022, defendant filed a postjudgment motion for a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to make a record of mitigating youth-related evidence for a future youth offender parole hearing. Defendant acknowledged that as a young adult LWOP offender he is statutorily ineligible for a youth offender parole hearing under section 3051, subdivision (h), but he argued this statutory exclusion violates equal protection and the ban on cruel and unusual punishment. The trial court denied the motion and defendant appealed.

DISCUSSION

On appeal, defendant renews his constitutional claims that the exclusion of young adult LWOP offenders from the youth offender parole scheme violates equal protection principles and prohibitions against cruel and unusual punishment. Consequently, he contends the trial court erred by denying his motion for a *Franklin* proceeding. We disagree.

2

# I

*Section 3051 and Youth Offender Parole Hearings*

The Legislature enacted section 3051 in response to a series of decisions that redefined the parameters of juvenile sentencing. (*People v. Acosta* (2021) 60 Cal.App.5th 769, 775 (*Acosta*).) In *Roper v. Simmons* (2005) 543 U.S. 551, 568-571, 578 [161 L.Ed.2d 1, 21-23, 28], the United States Supreme Court held that the Eighth Amendment's ban on cruel and unusual punishment categorically prohibits the imposition of the death penalty on juvenile offenders. Five years later, in *Graham v. Florida* (2010) 560 U.S. 48, 68-75, 82 [176 L.Ed.2d 825, 841-846, 850], the Supreme Court found it cruel and unusual to sentence nonhomicide juvenile offenders to LWOP. Then, in *Miller v. Alabama* (2012) 567 U.S. 460, 469-480, 489 [183 L.Ed.2d 407, 417-424, 430] (*Miller*), the Supreme Court extended *Graham*'s reasoning to homicide cases, holding that the Eighth Amendment prohibits *mandatory* LWOP sentences for juvenile homicide offenders.[2] (See also *People v. Caballero* (2012) 55 Cal.4th 262, 265, 267-268 [holding that a juvenile may not be sentenced to the functional equivalent of LWOP for a nonhomicide offense]; *Franklin, supra*, 63 Cal.4th at p. 276 [holding that a juvenile may not be sentenced to the functional equivalent of LWOP for a homicide offense without the protections outlined in *Miller*].)

---

[2]     *Miller* does not bar LWOP sentences for children who commit homicide, "but only so long as the sentence is not mandatory—that is, only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment. [Citation.]" (*Jones v. Mississippi* (2021) 593 U.S.___ [209 L.Ed.2d 390, 400].) A hearing where youth and its attendant characteristics are considered as sentencing factors is necessary to ensure that LWOP sentences are imposed only in those relatively rare cases where such a sentence is appropriate. (*Id*. at pp. ___ [209 L.Ed.2d at pp. 403-404]; *People v. Caballero, supra*, 55 Cal.4th at p. 268, fn. 4.) Further, since *Miller* applies retroactively (*Montgomery v. Louisiana* (2016) 577 U.S. 190, 208-209 [193 L.Ed.2d 599, 619-620]), juvenile offenders serving LWOP sentences are entitled to the benefits of an individualized sentencing determination even if their convictions were final when *Miller* was decided. (*Jones v. Mississippi, supra*, U.S. at p. ___ [209 L.Ed.2d at p. 408].)

The rationale of these decisions is that children are constitutionally different from adults for purposes of sentencing. (*Miller, supra*, 567 U.S. at p. 471.) In short, because juveniles have diminished culpability and greater prospects for reform, as compared to adult offenders, they are less deserving of the most severe punishments. (*Ibid.*; accord, *People v. Delgado* (2022) 78 Cal.App.5th 95, 100.)

In 2013, the Legislature responded to these decisions by enacting Senate Bill No. 260 (2013-2014 Reg. Sess.), which (among other things) added section 3051. (Former § 3051; Stats. 2013, ch. 312 § 4.) In enacting the bill, the Legislature explained that "youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (Stats. 2013, ch. 312, § 1.) The bill's stated purpose was to "establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with [the decisions in *Graham*, *Miller*, and *Caballero*]." (*Ibid.*)

To that end, section 3051 requires the parole board to conduct youth offender parole hearings to provide eligible offenders with the possibility of parole no later than the offender's 25th year of incarceration. (§ 3051.) By ensuring that eligible juvenile offenders will have a meaningful opportunity for release no more than 25 years into their incarceration, section 3051 made it unnecessary for courts to decide Eighth Amendment challenges to their sentences. (*In re Woods* (2021) 62 Cal.App.5th 740, 750, review granted June 16, 2021, S268740; *Franklin, supra*, 63 Cal.4th at pp. 280-281.)

As originally enacted, section 3051 afforded youth offender parole hearings only to juvenile offenders who were who were under 18 years of age at the time of their

4

controlling offense.[3]  (Former § 3051; Stats. 2013, ch. 312, § 4.)  It also excluded juvenile offenders who were sentenced to LWOP.  (*Ibid.*)

The Legislature subsequently increased the age threshold, first to 23 years, and then to 25 years, citing scientific research showing that cognitive brain development continues beyond the age of 18 into the mid-20's.  (Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 684, § 1.5; Assem. Com. on Public Safety and Appropriations, Floor Analysis on Sen. Bill No. 261 (2015-2016 Reg. Sess.) as amended June 1, 2015, p. 2; Sen. Rules Com. on Public Safety, Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 261 (2015-2016 Reg. Sess.) as amended June 1, 2015, p. 3; Assem. Com. on Public Safety, Analysis on Assem. Bill No. 1308 (2017-2018 Reg. Sess.) as amended Mar. 30, 2017, p. 2.)  The Legislature also amended section 3051 to allow youth offender parole hearings for juveniles sentenced to LWOP—a change intended to bring California into compliance with the constitutional requirements of *Miller, supra*, 567 U.S. 460 and *Montgomery v. Louisiana, supra*, 577 U.S. 190 without the need for an expensive and time consuming resentencing hearing.  (Stats. 2017, ch. 684, § 1.5; *People v. Sands* (2021) 70 Cal.App.5th 193, 198 (*Sands*).)

As a result of these amendments, most persons convicted of a controlling offense committed before the age of 26 are now eligible for a youth offender parole hearing after 15, 20, or 25 years in prison, depending on their controlling offense.  (*Sands, supra*, 70 Cal.App.5th at p. 198; § 3051, subds. (a) & (b).)  However, section 3051, subdivision (h) continues to exclude certain categories of offenders from the youth offender parole hearing process, including young adult offenders, like defendant, sentenced to LWOP for a controlling offense committed between the ages of 18 and 25.  (*Sands,* at p. 199; § 3051, subd. (h).)

---

[3]    The " '[c]ontrolling offense' " is the offense or enhancement for which the sentencing court imposed the longest term of imprisonment.  (§ 3051, subd. (a)(2)(B).)

Against this backdrop, the California Supreme Court recognized a right for offenders who are eligible for a youth offender parole hearing to make a record of youth-related mitigating evidence so that the parole board, years later, may properly discharge its obligation to determine whether the offender is fit to rejoin society. (*Franklin, supra*, 63 Cal.4th at pp. 268-269, 284; *In re Cook* (2019) 7 Cal.5th 439, 446-447; *People v. Benzler* (2021) 72 Cal.App.5th 743, 748-749.) For ease of reference, we shall refer to this evidentiary preservation proceeding as a "*Franklin* proceeding."

## II

### *Equal Protection*

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' [Citation.]" (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)

When evaluating an equal protection claim, we proceed in two steps. (*Sands, supra*, 70 Cal.App.5th at p. 202.) First, we ask whether the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Ibid.*) This initial inquiry is not whether the groups are similarly situated for all purposes, but whether they are similarly situated for purposes of the challenged law. (*Ibid.*)

Second, if it is demonstrated that two similarly situated groups have been treated differently, we analyze whether the distinction made between the groups is justified. (*People v. Flint* (2018) 22 Cal.App.5th 983, 990.) The level of scrutiny applied depends on the on the right implicated. (*Ibid.*) Where, as here, "a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)

6

Rational basis review is extremely deferential.  (*Jackson, supra*, 61 Cal.App.5th at p. 196.)  Under this standard, a law will be sustained if it can be said to advance some legitimate government interest, even if the law seems unwise or the rationale seems tenuous.  (*People v. Brown* (2014) 227 Cal.App.4th 451, 469.)  Rational basis review is not a license for courts to sit as a superlegislature, judging the wisdom, fairness, or logic of legislative policy determinations.  (*Heller v. Doe* (1993) 509 U.S. 312, 319 [125 L.Ed.2d 257, 270] (*Heller*).)

A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights is presumed rational and must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.  (*Heller, supra*, 509 U.S. at pp. 319-320; accord, *People v. Chatman* (2018) 4 Cal.5th 277, 289; see *Acosta, supra*, 60 Cal.App.5th at p. 778 [the party challenging the statute has the burden to negate every conceivable justification which might support it].)  "The underlying rationale for a statutory classification need not have been ' "ever actually articulated" ' by lawmakers, and it does not need to ' "be empirically substantiated." ' [Citation.]" (*Chatman, supra*, at p. 289.)  A court may engage in " 'rational speculation' " as to the justifications for the legislative choice and it is immaterial whether such speculation has a " 'foundation in the record.' " (*Turnage, supra*, 55 Cal.4th at p. 75; *Heller*, at p. 320.)  Whether the conceived reason actually motivated the legislative choice is constitutionally irrelevant.  (*Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 780; *420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1334; *Raidoo v. Moylan* (9th Cir. 2023) 75 F.4th 1115, 1121.)

Defendant contends that he is entitled to a *Franklin* proceeding to create a record of mitigating youth-related evidence for a future youth offender parole hearing.  Although he admits he is statutorily ineligible for a youth offender parole hearing under section 3051, he contends this exclusion violates equal protection because it denies a youth offender parole hearing to young adult LWOP offenders, while extending that

7

benefit to young adult offenders sentenced to parole-eligible life terms. Defendant contends the two groups are similarly situated and there is no rational basis for the differential treatment.

We independently review this facial constitutional challenge (*Sands, supra*, 70 Cal.App.5th at p. 202) and find there is no equal protection violation, because even if we assume the two groups are similarly situated, there is a rational basis for distinguishing between them.

Numerous appellate courts have considered the same equal protection argument that defendant raises in this appeal. To date, every court, save one (*People v. Hardin* (2022) 84 Cal.App.5th 273, review granted Jan, 11, 2023, S277487 (*Hardin*)), has identified a rational basis for the different treatment. (*People v. Ngo* (2023) 89 Cal.App.5th 116, 123, review granted May 17, 2023, S279458 (*Ngo*); *Sands, supra*, 70 Cal.App.5th at p. 203-205; *People v. Morales* (2021) 67 Cal.App.5th 326, 348-349 (*Morales*); *Jackson, supra*, 61 Cal.App.5th at pp. 199-200; *Acosta, supra*, 60 Cal.App.5th at pp. 780-781; *In re Williams* (2020) 57 Cal.App.5th 427, 436 (*Williams*).) These decisions have generally found that a rational basis exists for treating young adult LWOP offenders differently because they have committed crimes that warrant harsher punishments compared to young adult offenders sentenced to parole-eligible life terms. (*Ngo, supra*, at p. 123, rev.gr.; *Sands,* at p. 204; *Morales, supra*, at p. 348; *Jackson*, at p. 200; *Acosta,* at p. 780; *Williams, supra*, at p. 436.) As one such court reasoned: "The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to

8

justify lifetime incarceration." (*Williams,* at p. 436.) We agree with this reasoning and join the courts concluding that there is a rational basis for excluding young adult LWOP offenders from the benefits of section 3051.

Defendant urges us to instead follow *Hardin, supra*, 84 Cal.App.5th 273, review granted, which concluded there is no rational basis for distinguishing between young adult offenders sentenced to LWOP and young adult offenders serving a parole-eligible life sentence. (*Id*. at pp. 288-291.) In *Hardin*, the appellate court conducted its rational basis analysis through the lens of the purpose of the statute. In its view, the sole purpose of enacting section 3051 was "to permit youth offenders a meaningful opportunity for parole if they demonstrate increased maturity and impulse control . . . ." (*Hardin,* at p. 288.) The court concluded, as to that purpose, there is "no plausible basis for distinguishing between same-age offenders based solely on the crime they committed." (*Ibid*.) The court further concluded that even if "relative culpability" has some proper role in the analysis, it is irrational to exclude young adult offenders sentenced to LWOP while allowing youth parole hearings for young adult offenders sentenced to functionally equivalent terms. (*Id*. at pp. 289-290.)

Our Supreme Court granted review in *Hardin, supra*, 84 Cal.App.5th 273, review granted. In the meantime, we do not find *Hardin* persuasive and therefore decline to follow it.

As the Fourth District Court of Appeal explained in *Ngo, supra*, 89 Cal.App.5th 116, review granted, *Hardin* "looked at the rational basis for the distinction strictly in terms of 'the goal of section 3051.' " (*Ngo,* at p. 125.) But "the 'rational basis' inquiry is *not* limited to the purposes of the challenged law." (*Ibid*.) "[A] law survives rational basis review so long as some conceivable legitimate purpose could have supported it—

9

regardless of [the] legislature's actual purpose in enacting [the] statute. [Citation.]"**[4]** (*Raidoo v. Moylan, supra*, 75 F.4th at p. 1121; *Heller, supra*, 509 U.S. at p. 320; *Turnage, supra*, 55 Cal.4th at p. 75; *Stuard v. Stuard, supra*, 244 Cal.App.4th at p. 780.) Here, the Legislature rationally could have concluded that despite not being fully mature, young adult LWOP offenders are nevertheless more culpable and more deserving of lifetime incarceration than young adult offenders sentenced to parole-eligible life terms.

Further, we reject the suggestion in *Hardin* that the legislative classification is irrational simply because some young adult offenders sentenced to LWOP are arguably less culpable than some young adult offenders sentenced to parole-eligible life terms. (*Hardin, supra*, 84 Cal.App.5th at p. 289.) The Legislature is afforded wide latitude in defining and prescribing punishments for criminal offenses. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.) "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made." (*Turnage, supra*, 55 Cal.4th at p. 77.) "A classification does not fail rational-basis review because it ' "is not made with mathematical nicety or because in practice it results in some inequality." ' [Citation.]" (*Heller, supra*, 509 U.S. at p. 321; accord, *Johnson v. Department of Justice, supra*, at p. 887 [a classification is not irrational simply because there is an imperfect fit between means and ends, or because it may be to some extent both underinclusive and overinclusive]; *Sands, supra*, 70 Cal.App.5th at pp. 204-205; *Ngo, supra*, at p. 126, rev.gr.)

Applying these principles, we cannot say that the Legislature lacked a rational basis for excluding young adult LWOP offenders from parole eligibility under section

---

**[4]** We also do not agree that providing youth offenders a meaningful opportunity for parole was section 3051's only goal. (See, e.g., *Sands, supra*, 70 Cal.App.5th at p. 203.)

3051.  Thus, section 3051 does not violate equal protection, and defendant is not entitled to a youth offender parole hearing.[5]

## III

### *Cruel and Unusual Punishment*

Defendant alternatively argues that excluding young adult LWOP offenders from parole eligibility violates the California Constitution's prohibition on cruel or unusual punishment.  (Cal. Const., art. I, § 17.)  We again are unpersuaded.

Under the California Constitution, a sentence is cruel or unusual only if it is " 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' "  (*People v. Johnson* (2010) 183 Cal.App.4th 253, 296.)  In making this determination, courts generally consider three factors:  (1) the nature of the offense and the offender; (2) a comparison of the challenged punishment with punishments prescribed for more serious offenses under California law; and (3) a comparison of the challenged punishment with punishments imposed by other states for the same offense.  (*Id.* at pp. 296-297; *People v. Edwards* (2019) 34 Cal.App.5th 183, 191 (*Edwards*).)

Because fixing the penalty for crimes is the province of the Legislature, a defendant has a considerable burden to overcome when he challenges a penalty as cruel or unusual.  (*People v. Johnson, supra*, 183 Cal.App.4th at p. 296.)  Only in the rarest of

---

[5]  In reaching this conclusion, we acknowledge that some courts have expressed concerns about the wisdom of excluding young adult LWOP offenders from the youth offender parole hearing process based on crimes they committed before reaching full cognitive and emotional maturity.  (See, e.g., *Acosta, supra*, 60 Cal.App.5th at pp. 780-781; *Morales, supra*, 67 Cal.App.5th at p. 349.)  However, as the *Acosta* court noted, equal protection analysis " 'does not entitle [us] to second-guess the wisdom, fairness, or logic of the law.' "  (*Acosta,* at p. 781.)  Because we find there is a rational basis to treat young adult LWOP offenders differently, we must reject defendant's equal protection challenge to section 3051.

cases will a court declare the length of sentence mandated by the Legislature as unconstitutionally excessive. (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093.)

In this case, defendant does not argue that *his* sentence is so disproportionate to his culpability that it shocks the conscience and offends fundamental notions of human dignity.[6] (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1146-1147 [noting that a challenge to a particular sentence requires consideration of the nature of the offense in the abstract, as well as the facts of the crime in question]; see *Edwards, supra*, 34 Cal.App.5th at p. 191.) Instead, he argues that it is cruel and unusual punishment to impose a mandatory LWOP sentence on *any* young adult offender.

In support of his argument, defendant relies primarily on the holding in *Miller, supra*, 567 U.S. 460 that the federal constitution (U.S. Const., 8th Amend.) prohibits mandatory LWOP sentences for juvenile homicide offenders who were under the age of 18 at the time their crimes were committed. (*Miller,* at p. 465.) Although acknowledging that *Miller*'s holding is limited to juvenile offenders, defendant argues that changes in the legal and scientific landscape since *Miller* was decided supports extending a ban on mandatory LWOP sentences to young adult offenders.

However, our Supreme Court has rejected essentially the same argument in the context of the death penalty. (*People v. Tran* (2022) 13 Cal.5th 1169, 1234-1235 [expansion of section 3051 does not support bar on the death penalty for individuals who were between the ages of 18 and 21 at the time of their offenses]; *People v. Flores* (2020) 9 Cal.5th 371, 429 [same].) As the Second District Court of Appeal reasoned when considering an Eighth Amendment challenge to a young adult LWOP sentence: If it is not cruel and unusual punishment to sentence young adult offenders to death, it is not

---

[6]   It is reasonable to question whether defendant *could* have raised an " 'as applied' " challenge to the constitutional validity of his sentence in the context of an appeal from an order denying a motion for a *Franklin* proceeding. (Cf. *Sands, supra*, 70 Cal.App.5th at pp. 201-202; see *Acosta, supra*, 60 Cal.App.5th at p. 780, fn. 5.)

cruel and unusual punishment to impose a lesser LWOP sentence. (*Williams, supra*, 57 Cal.App.5th at p. 439; see *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1031-1032 [sentencing young adult offender to LWOP is not cruel and unusual punishment under the Eighth Amendment]; *Edwards, supra*, 34 Cal.App.5th at pp. 190-192 [sentencing a young adult offender to the functional equivalent of LWOP is not cruel and unusual punishment under federal or state constitution]; *People v. Perez* (2016) 3 Cal.App.5th 612, 617-618 [same]; *Acosta, supra*, 60 Cal.App.5th at pp. 781-782 [not cruel and unusual to sentence a young adult offender with an autism spectrum disorder to LWOP].) Defendant has failed to show that it is cruel and unusual punishment to sentence young adult offenders to LWOP. Accordingly, the trial court properly denied his request for a *Franklin* proceeding.

## DISPOSITION

The order denying defendant's motion for a *Franklin* proceeding is affirmed.


_____\\s\\_____,
　　　　　　　　　　　Krause, J.



We concur:



_____\\s\\_____,
Robie, Acting P. J.



_____\\s\\_____,
Mauro, J.